**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**JAY HAWK on behalf of himself and others similarly situated,**

**Plaintiff(s),**

**vs.**

**EASTERN GROUP OF GAINESVILLE, INC., d/b/a YAMATO JAPANESE RESTAURANT 1,**

**Defendant.** /

**CASE NO.: 1:25-CV-00325-RH-MJI**

**COLLECTIVE/CLASS REPRESENTATION**

**JURY TRIAL DEMANDED**

**AMENDED CLASS/COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JAY HAWK ("Hawk" or "Plaintiff"), individually and on behalf of all other similarly situated individuals, by and through undersigned counsel, brings suit against Defendant, EASTERN GROUP OF GAINESVILLE, INC., d/b/a YAMATO JAPANESE RESTAURANT 1 ("Yamato"), on a collective basis pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, and on a class wide basis pursuant to Fla. Const. Art. X § 24.

Hawk and Opt-in Plaintiffs[1], ERIC RUGGIREO ("RUGGIREO") and BREANNA SEALE ("SEALE") (collectively referred to as "Retaliation Plaintiffs")

[1] Individuals who opt in become party plaintiffs upon the filing of a consent and therefore nothing further, including conditional certification, is required for them to

also assert claims for retaliation pursuant to Fla. Stat. §448.110(5) and 29 U.S.C. §215(a)(3) of the FLSA. *See* D.E. Nos. 4-2 and 5-1.

## INTRODUCTION

1. The FLSA is designed to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202(a). To achieve its purposes, the FLSA requires three things. First, the FLSA requires payment of minimum wages. 29 U.S.C. § 206(a). Second, the FLSA requires overtime pay for covered employers whose employees work in excess of 40 hours per workweek. 29 U.S.C. 207(a). And third, the FLSA establishes minimum recordkeeping requirements for covered employers. 29 U.S.C. § 211(a); 29 U.S.C § 516.2(a)(7).

2. The liquidated damages provision of the FLSA constitutes a congressional recognition that failure to pay the statutory minimum on time may be so detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers and to the free flow of commerce, that double payment must be made in the event of a delay in order to

---

be a party to the lawsuit. *Mickles on behalf of herself v. Country Club Inc.,* 887 F.3d 1270, 1278 (11th Cir. 2018) (citing *Prickett v. DeKalb County*, 349 F.3d 1294, 1296 (11th Cir. 2003).

insure restoration of the worker to that minimum standard. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08, 65 S.Ct. 895, 902 (1945).

3. To the extent any partial payments have been made by Defendant to Plaintiff of the disputed amounts at the time of the filing of this complaint, this action seeks to recover judgment in favor of Plaintiff and against Defendant as well as all remaining damages, including but not limited to liquidated damages and reasonable attorneys' fees and costs. *See id.*

4. Likewise, Fla. Const. Art. X § 24 provides a constitutional right to payment of minimum wages.

5. Plaintiff, and other current and former similarly situated employees, are hourly paid servers who worked for Defendant. Due to Defendant's policies and procedures, as described more fully herein, Plaintiff and other current and former similarly situated employees were/are deprived of complete minimum wages for all hours worked.

6. Defendant operated an illegal tip pool wherein Defendant's owners retained a portion of Plaintiff's and similarly situated servers' tips.

7. Additionally, Defendant operated an illegal tip pool wherein Defendant required Plaintiff and similarly situated servers to share his/their tips with other employees who are not "customarily and regularly tipped employees."

8. Additionally, Defendant requires Plaintiff and similarly situated servers to clock out before the end of their shift, resulting in unpaid minimum wages.

9. Plaintiff brings this action under the FLSA individually and on behalf of all other similarly situated current and former servers who have been employed by Defendant ("Putative Collective Members") at any time from three years preceding the filing of this action through the final disposition of this matter. These class members should be informed of the pendency of this action and apprised of their rights.

10. Plaintiff brings this action under the Florida Constitution individually and on behalf of all other similarly situated current and former servers who have been employed by Defendant ("Putative Class Members"), at any time from five years preceding the filing of this action through the final disposition of this matter.

11. The Retaliation Plaintiffs also assert claims for retaliation pursuant to Fla. Stat. §448.110(5) and 29 U.S.C. §215(a)(3) of the FLSA.

**PARTIES**

12. Plaintiff, HAWK, is an individual residing in Gainesville, Alachua County, Florida and has worked for Defendant as a server in Gainesville, Alachua County, Florida from approximately May 2025 to present.

13. Plaintiff, RUGGIREO is an individual residing in Gainesville, Alachua County, Florida and has worked for Defendant as a server in Gainesville, Alachua County, Florida from approximately July 2025 to present.

14. Plaintiff, SEALE is an individual residing in Gainesville, Alachua County, Florida and has worked for Defendant as a hostess since February 2025 and as a server from on or around July 2025 to present.

15. The Putative Class/Collective Members include each of Defendant's respective servers who performed the same or similar work as Plaintiff and were subjected to the same or similar payment policies as Plaintiff at any time from five years preceding the filing of this action through the final disposition of this matter.

16. Defendant is a Florida profit corporation organized under the laws of the State of Florida. Defendant is a covered employer under the FLSA and Fla. Const. Art. X § 24 and acted as such in relation to Plaintiff and the Putative Class/Collective Members it employed.

## **JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201-19.

18. This Court has supplemental jurisdiction over the additional Fla. Const. Art. X § 24 claim pursuant to 28 U.S.C. § 1367 and the claims form part of the same case or controversy.

19. This Court has personal jurisdiction over Defendant because it is a Florida corporation.

20. Venue is proper in the Northern District of Florida because this is a judicial district where a substantial part of the events or omissions giving rise to the claims occurred.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## COVERAGE

22. At all material times, Defendant has been an employer within the meaning of section 203(d) of the FLSA and Fla. Const. Art. X § 24, which is defined to include any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. § 203(d).[2]

23. At all material times, Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of section 203(s)(l) of the FLSA and Fla. Const. Art. X § 24 because they have had and continue to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

24. At all material times, Plaintiff and the Putative Class/Collective Members are (or were) employees who engaged in commerce or in the production of goods for commerce as to their respective employment with Defendant as required by sections 206 and 207 of the FLSA and Fla. Const. Art. X § 24 by running credit

[2] Fla. Const. Art. X § 24 incorporates the provisions of the FLSA.

card transactions and handling goods such as napkins, silverware, appliances, food items, and restaurant equipment which had travelled in interstate commerce on a daily basis.

25. At all material times, Defendant has had, and continues to have, an annual gross business volume in excess of the statutory standard of $500,000.00.

26. During Plaintiff's employment with Defendant, Defendant employed/employes at least two employees who handled goods, materials and supplies which travelled in interstate commerce, such as napkins, silverware, appliances, food items, and restaurant equipment, and other items used to run the business.

27. Therefore, at all material times relevant to this action, Defendant constituted an enterprise covered by the FLSA and Fla. Const. Art. X § 24, and as defined by 29 U.S.C. §§ 203(r) and 203(s).

28. Additionally, Plaintiff and the Putative Class/Collective members were individually engaged in interstate commerce during their employment with Defendant as a result of their routine and daily use of credit card machines that transmitted communications across state lines and as a result of their routine and regular handling of goods, materials and supplies which had travelled in interstate commerce.

## GENERAL ALLEGATIONS

29. Defendant's compensation policies violated and continue to violate the FLSA and Fla. Const. Art. X § 24 by failing to pay its respective employees, including Plaintiffs and the Putative Class Members, all minimum wages and time and one-half for all time worked in excess of 40 hours per workweek.

30. Defendant paid Plaintiff and the Putative Class/Collective Members a sub-minimum wage, utilizing a "tip credit."

31. Defendant required Plaintiff and the Putative Class/Collective Members to share a portion of their tips with Defendant's managers and other employees who are not "customarily and regularly tipped employees."

32. Defendant also retained a portion of Plaintiff and the Putative Class/Collective Members tips in order to pay the direct wages of other employees.

33. Defendant also retained a portion of Plaintiff and the Putative Class/Collective Members tips in order to pay the direct wages of hibachi chefs.

34. Some or all of Defendant's hibachi chefs are paid a guaranteed salary.

35. Defendant manipulates the hibachi chefs' paystubs to make it appear as though it is paying its hibachi chefs an hourly rate plus tips, but in reality Defendant is paying such hibachi chefs a "guaranteed" salary. *See* sample job posting attached as **Exhibit A**.

36. Servers' tips are used by Defendant to pay a portion of the guaranteed salary of one or more hibachi chefs.

37. Some or all of the servers' tips are not distributed to Defendant's hibachi chefs as "tips."

38. Pursuant to the FLSA and Fla. Const. Art. X § 24, which incorporates the provisions of the FLSA, all tips are the sole property of the employee regardless of whether the employer takes a tip credit. The law also prohibits any arrangement between the employer and tipped employee whereby any part of the tips received becomes the property of the employer. For example, even where a tipped employee receives at least the full minimum wage, the employee may not be required to turn over his or her tips to the employer or the employer's managers.

39. Even where a tipped employee receives the tip-credited wage, the law prohibits any arrangement between the employer and tipped employee whereby any part of the tips received is shared with other employees who are not "customarily and regularly tipped employees."

40. Defendant, here, violated the FLSA and Fla. Const. Art. X § 24 by illegally retaining and distributing tips that should have been distributed to/retained by Plaintiff and similarly situated servers.

41. As a result of these improper common policies and practices, Defendant illegally took a tip credit under federal and state law and must repay the tip credit to Plaintiff and the Putative Class/Collective Members.

42. Additionally, because tips are the sole property of the employee Defendant must also repay the illegally withheld tips to Plaintiff and all Putative Class/Collective Members.

43. Prior to filing the instant lawsuit, Plaintiff sent a minimum wage notice letter ("minimum wage notice letter") putting Defendant on notice of the minimum wage allegations contained within this Complaint.

44. After receiving the minimum wage notice letter, Defendant began its attempts to retaliate against Plaintiff – who still works for Defendant – and to impede Plaintiff and other Putative Class/Collective Members from being able to pursue their rights under the FLSA and Florida law.

45. For example, despite Plaintiff providing full availability for scheduling, Defendant reduced the number of Plaintiff's shifts/hours after receiving the minimum wage notice letter. Specifically, Plaintiff' was reduced to only 2 shifts per week.

46. Undersigned counsel brought the reduction of hours/shifts to the attention of counsel for Defendant who responded that "Mr. Hawk historically worked only two (2) days per week with the exception of one or two weeks recently when he was scheduled for additional shifts as needed." However, the schedules and records prove otherwise.

47. Immediately following the filing of the original Complaint in tis matter, Defendant also began making false accusations about Plaintiff; alleging that he spit in customers' food.

48. Next, during the week of October 6, 2025 to October 10, 2025, Defendant began demanding that Plaintiff and other Putative Class/Collective Members sign the attached "Yamato Rules Acknowledgement" form. *See* **Exhibit B**.

49. For example, Defendant provided Plaintiff with the Yamato Rules Acknowledgement form on October 10, 2025, and told Plaintiff that he was required to sign and return the document within one week in order to continue his employment.

50. However, Defendant did not provide a copy of the "rules or policies" of which Plaintiff was to acknowledge by signing the Yamato Rules Acknowledgement. Instead, Plaintiff had to explicitly request the "rules and policies" referenced in the Yamato Rules Acknowledgement before receiving a copy and advised Defendant that he needed to consult with his counsel before signing any documents.

51. Other Putative Class/Collective Members were also just recently provided with the Yamato Rules Acknowledgement form and told that they must also sign the document to continue their employment. Similar to Plaintiff, Defendant

failed to also provide a copy of the "rules and procedures" referenced in the Yamato Rules Acknowledgement form, yet expected such individuals to execute same.

52. Upon information and belief, some Putative Class/Collective Members likely executed the Yamato Rules Acknowledgement form without reviewing what it was that they were purportedly acknowledging by executing same.

53. Unfortunately, it has now been discovered that the purported "rules and policies" that Defendant is now attempting to force Plaintiff and the Putative Class/Collective Members to now acknowledge contains a purported arbitration agreement in an attempt to hinder Plaintiff and the Putative Class/Collective Members from pursuing their rights under the FLSA and Florida law, and from filing/joining this lawsuit which Defendant was put on notice of on September 26, 2025, when it received Plaintiff's minimum wage notice letter.

54. Ironically, the minimum wage notice letter's 15-day notice period expired on October 10, 2025, which happened to be the week that Defendant rolled out its attempt to have Plaintiff and other Putative Class/Collective Members execute the Yamato Rules Acknowledgement form, without even showing such individuals what they were purportedly acknowledging by executing the form.

55. Defendant's attempt to impede Plaintiff's and the Putative Collective Members' ability to pursue their wage and hour claims under the FLSA as a Putative Collective Member or under Florida law as a Putative Class Member by forcing them

to enter into purported arbitration agreements, is retaliatory, contrary to public policy and forbidden by precedent within this circuit.

56. On October 15, 2025, Plaintiff RUGGIREO opted-into this matter by filing a consent to join collective action form making him a party Plaintiff to this matter. *See* D.E. 4-2.

57. On October 17, 2025, undersigned counsel advised counsel for Defendant that RUGGIREO joined the instant lawsuit.

58. Immediately thereafter, Defendant began retaliating against RUGGIREO by reducing the number of shifts usually worked by him.

59. Defendant also began looking for ways to terminate RUGGIREO in retaliation for joining this matter. For example, Defendant began soliciting other servers to sign statements stating that they were being sexually harassed by RUGGIREO.

60. Defendant's manager/employee, Paris Montgomery, approached multiple female servers trying to force them into prepare statements stating that RUGGIREO was making sexual advances toward them.

61. Some female servers refused Ms. Montgomery's request to sign statements.

62. At least one server felt forced to write a statement about Ruggireo, but subsequently reported to the General Manager (Kazu) that she felt forced to write the statement and that Ruggireo never made her feel uncomfortable.

63. Defendant's manager/employee, Montgomery, also approached Opt-in Plaintiff SEALE asking her if she was planning to join this lawsuit. When SEALE replied yes, Montgomery tried to convince SEALE not to join and told SEALE that she will have to pay Defendant if Plaintiffs lose the lawsuit.

64. After SEALE advised Montgomery/Defendant that she was joining the lawsuit, Montgomery – who writes the schedules for Defendant - started reducing the number of shifts to be worked by SEALE.

65. Defendant's manager/employee, Paris Montgomery,

66. Because of these retaliatory actions, HAWK, RUGGIREO and SEALE seek additional damages pursuant to Fla. Stat. §448.110(5) and 29 U.S.C. §215(a)(3).

**<u>FLSA COLLECTIVE ACTION ALLEGATIONS</u>**

67. Plaintiff brings the first cause of action as a collective action on behalf of a collective of individuals similarly situated. Specifically, Plaintiff brings these claims under the FLSA as a collective action and will request the Court to grant conditional certification under 29 U.S.C. § 216(b), and to order notices to potential

opt-in individuals who are or were employed by Defendant as servers within three (3) years prior to the commencement of this lawsuit (the "FLSA Collective").

68. Potential opt-in members of the collective action are similarly situated to Plaintiff. They all held the same/similar job positions and had substantially similar job requirements and pay provisions with Defendant. They are or were subject to the same common practices, policies, and plans of Defendant. They all suffered damages in the nature of lost minimum wages, tips, and other damages resulting from the wrongful conduct of their respective employer-Defendant.

## FLORIDA CLASS ACTION ALLEGATIONS

69. Plaintiff brings the second cause of action, the Florida Constitutional claim, as an opt-out class action under Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all similarly situated current and former individuals employed by Defendant as servers within five (5) years prior to the commencement of this lawsuit. ("FL Rule 23 Class").

70. Upon information and belief, this action satisfies the requirements of Rule 23(a), FED. R. CIV. P., as alleged in the following particulars:

a. The proposed FL Rule 23 Class is so numerous that joinder of all individual members in this action is impracticable, and the disposition of their claims as a class will benefit the parties and the Court;

b. There are questions of law and/or facts common to the members of the proposed FL Rule 23 Class;

c. The claims of Plaintiff, the representative of the proposed FL Rule 23 Class, are typical of the claims of the proposed FL Rule 23 Class; and

d. Plaintiff, the representative of the proposed FL Rule 23 Class, will fairly and adequately protect the interests of the FL Rule 23 Class.

71. In addition, upon information and belief, this action satisfies one or more of the requirements of Fed. R. Civ. P. 23(b), because the questions of law and/or fact common to the members of the proposed FL Rule 23 Class predominate over any questions affecting only individual members.

72. A class action is superior to other available methods for the fair and efficient adjudication of the controversy—particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual FL Rule 23 Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or

impossible for the individual FL Rule 23 Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual FL Rule 23 Class Members would create a risk of inconsistent and/or varying adjudications with respect to the individual FL Rule 23 Class Members, establishing incompatible standards of conduct for Defendant and resulting in impairment of the FL Rule 23 Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

73. Upon information and belief, Defendant violated and continues to violate Fla. Const. Art. X § 24. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

74. This action against Defendant is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

**COUNT I – RECOVERY OF MINIMUM WAGES (29 U.S.C. § 206)**

75. Plaintiff and the Putative Collective Members incorporate by reference paragraphs 1-74 as though fully and completely set forth herein.

76. Plaintiff and the Putative Collective Members are/were entitled to all tips earned by them during their employment with Defendant.

77. Plaintiff and the Putative Collective Members are/were entitled to be paid full minimum wages for each hour worked during their employment with Defendant.

78. Plaintiff and the Putative Collective Members did not receive all tips earned by them during their employment with Defendant.

79. Plaintiff and the Putative Collective Members did not receive the full minimum wage contrary to the FLSA as a result of Defendant's improper practice and policy of improperly retaining their tips and/or requiring them to share tips/contribute to a tip pool that included employees who do not customarily receive tips.

80. As a result of Defendant's improper policy(s) and practice(s), Plaintiff and the Putative Collective Members have not received the full amount of tips earned by them during one or more weeks during their employment with Defendant.

81. As a result of Defendant's improper policy(s) and practice(s), Plaintiffs and the Putative Collective Members have not been properly compensated the statutory minimum wage for all hours worked per week during their employment with Defendant.

82. As a result of Defendant's improper policy(s) and practice(s), Plaintiffs and the Putative Collective Members are entitled to return of the tip credit taken by Defendant.

83. Defendant willfully failed to pay Plaintiff and the Putative Collective Members the statutory minimum wage during the subject period of work contrary to the FLSA.

84. As a direct and proximate result of Defendant's deliberate nonpayment of wages/tips, Plaintiff and the Putative Collective Members have been damaged in the loss of tips for the subject weeks that they worked for the Defendant.

85. As a direct and proximate result of Defendant's deliberate nonpayment of wages, Plaintiff and the Putative Collective Members have been damaged in the loss of minimum wages and tips for the subject weeks that they worked for the Defendant.

86. As a result of Defendant's willful violation of the FLSA, Plaintiff and the Putative Collective Members are entitled to liquidated damages and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands an Order awarding:

(a) payment to Plaintiff and all Putative Collective Members of the tips improperly retained by Defendant;

(b) payment to Plaintiff and all Putative Collective Members of full minimum wages (i.e. return of the tip credit) for all hours worked at the correct rate pursuant to the FLSA;

(c) an equal amount of liquidated damages, or in the alternative pre-judgment and post-judgment interest at the highest rate allowed by law;

(d) reasonable attorneys' fees and costs for all time worked by the attorneys for Plaintiffs in prosecuting this case pursuant to the FLSA; and

(e) any other relief this Court deems just and proper.

**COUNT II – RECOVERY OF MIMIMUM WAGES**
**(FLA. CONST. ART. X § 24)**

87. Plaintiff and the Putative Class Members incorporate by reference paragraphs 1-86 as though fully and completely set forth herein.

88. Plaintiff and the Putative Class Members are/were entitled to all tips earned by them during their employment with Defendant.

89. Plaintiff and the Putative Class Members are/were entitled to be paid full minimum wages for each hour during their employment with Defendant.

90. Plaintiff and the Putative Class Members did not receive all tips earned by them during their employment with Defendant.

91. Plaintiff and the Putative Class Members did not receive the full minimum wage contrary to Fla. Const. Art. X § 24 as a result of Defendant's improper practice and policy of requiring them to share tips/contribute to a tip pool that included employees who do not customarily receive tips.

92. Plaintiff and the Putative Class Members did not receive the full minimum wage contrary to Fla. Const. Art. X § 24 as a result of Defendant's improper practice of improperly retaining a share of their tips.

93. As a result of Defendant's improper policy(s) and practice(s), Plaintiff and the Putative Class Members have not received the full amount of tips earned by them during one or more weeks during their employment with Defendant.

94. As a result of Defendant's improper policy(s) and practice(s), Plaintiff and the Putative Class Members have not been properly compensated the statutory minimum wage for all hours worked per week during their employment with Defendant.

95. Defendant willfully failed to pay Plaintiff and the Putative Class Members the statutory minimum wage during the subject period of work contrary to Fla. Const. Art. X § 24.

96. As a direct and proximate result of Defendant's deliberate nonpayment of wages, Plaintiff and the Putative Class Members have been damaged in the loss of tips for the subject weeks that they worked for the Defendant.

97. As a direct and proximate result of Defendant's deliberate nonpayment of wages/tips, Plaintiff and the Putative Class Members have been damaged in the loss of minimum wages and tips for the subject weeks that they worked for the Defendant.

98. As a result of Defendant's willful violation of Fla. Const. Art. X § 24, Plaintiff and the Putative Class Members are entitled to liquidated damages and reasonable attorneys' fees and costs.

99. Plaintiff complied with any and all requirements prior to the filing of this Complaint for Florida minimum wages.

WHEREFORE, Plaintiff demands an Order awarding:

(a) payment to Plaintiff and all Putative Class Members of the tips improperly retained by Defendant;

(b) payment to Plaintiff and all Putative Class Members of full minimum wages (i.e. return of the tip credit) for all hours worked at the correct rate pursuant to Fla. Const. Art. X § 24;

(c) an equal amount of liquidated damages, or in the alternative pre-judgment and post-judgment interest at the highest rate allowed by law;

(d) reasonable attorneys' fees and costs for all time worked by the attorneys for Plaintiff in prosecuting this case pursuant to Fla. Const. Art. X § 24; and

(e) any other relief this Court deems just and proper.

**COUNT III - RETALIATION IN VIOLATION OF Fla. Stat. §448.110(5)**

100. The Retaliation Plaintiffs reallege and incorporate by reference paragraphs 1-99 as though fully and completely set forth herein.

101. Upon filing this lawsuit, Defendant began reducing the number of shifts worked by HAWK.

102. Upon filing this lawsuit, Defendant began making up accusations about HAWK in an attempt to create a basis to terminate HAWK, to make it appear as though Defendant was not retaliating against HAWK for filing the instant lawsuit. For example. Defendant immediately began accusing HAWK of spitting in customers' food.

103. Upon joining this lawsuit, Defendant began reducing the number of shifts worked by RUGGIREO.

104. Upon filing this lawsuit, Defendant began making up accusations about RUGGIREO in an attempt to create a basis to terminate RUGGIREO, to make it appear as though Defendant was not retaliating against RUGGIREO for joining this lawsuit. For example. Defendant immediately began trying to recruit female servers to write statements stating that RUGGIREO sexually harassed them.

105. Upon advising management that she would be joining this lawsuit, Defendant began reducing the number of shifts worked by SEALE.

106. Defendant has discriminated and retaliated against the Retaliation Plaintiffs because they filed or joined this lawsuit, in violation of Fla. Stat. §448.110(5).

107. Defendant's retaliatory and discriminatory conduct towards the Retaliation Plaintiffs was willful as Defendant knew or should have known that their actions were in violation of Fla. Stat. §448.110(5).

108. As a direct and proximate result of Defendant's unlawful conduct, the Retaliation Plaintiffs have been damaged.

109. The Retaliation Plaintiffs are entitled to an award of reasonable attorneys' fees and costs.

WHEREFORE, the Retaliation Plaintiffs seek a judgment against Defendant for violation of Fla. Stat. §448.110(5); as well as back pay, an equal amount in liquidated damages, front pay, compensatory damages, punitive damages, reasonable costs and attorneys' fees and all other equitable relief this Court deems just.

**COUNT IV - RETALIATION IN VIOLATION OF §215(a)(3)**

110. The Retaliation Plaintiffs reallege and incorporate by reference paragraphs 1-109 as though fully and completely set forth herein.

111. Upon filing this lawsuit, Defendant began reducing the number of shifts worked by HAWK.

112. Upon filing this lawsuit, Defendant began making up accusations about HAWK in an attempt to create a basis to terminate HAWK so as to make it appear as though Defendant was not retaliating against HAWK for filing the instant lawsuit. For example. Defendant immediately began accusing HAWK of spitting in customers' food.

113. Upon joining this lawsuit, Defendant began reducing the number of shifts worked by RUGGIREO.

114. Upon filing this lawsuit, Defendant began making up accusations about RUGGIREO in an attempt to create a basis to terminate RUGGIREO so as to make it appear as though Defendant was not retaliating against RUGGIREO for joining this lawsuit. For example. Defendant immediately began trying to recruit female servers to write statements stating that RUGGIREO sexually harassed them.

115. Upon advising management that she would be joining this lawsuit, Defendant began reducing the number of shifts worked by SEALE.

116. Defendant has discriminated and retaliated against the Retaliation Plaintiffs because they filed or joined this lawsuit, in violation of 29 U.S.C. §215(a)(3).

117. Defendant's retaliatory and discriminatory conduct towards the Retaliation Plaintiffs was willful as Defendant knew or should have known that their actions were in violation of 29 U.S.C. §215(a)(3).

118. As a direct and proximate result of Defendant's unlawful conduct, the Retaliation Plaintiffs have been damaged.

119. The Retaliation Plaintiffs are entitled to an award of reasonable attorneys' fees and costs.

WHEREFORE, the Retaliation Plaintiffs seek a judgment against Defendant for violation of 29 U.S.C. §215(a)(3); as well as back pay, an equal amount in liquidated damages, front pay, compensatory damages, punitive damages, reasonable costs and attorneys' fees and all other equitable relief this Court deems just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 12, 2025.

Respectfully submitted,

*/s/ Kimberly De Arcangelis*
Kimberly De Arcangelis, Esq.
Bar No.: 0025871
MORGAN & MORGAN, P.A.
20 N. Orange Avenue, 15th Fl
Orlando, Florida 32801
Tel: (407) 420-1414
Fax: (407) 245-3383
E-Mail: kimd@forthepeople.com

*Trial Attorneys for Plaintiff and the Putative Class/Collective*